**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLORADO**

| | |
|---|---|
| In re: ) | |
| ) | |
| DENVER BOULDERING CLUB, LLC, ) | Case No. 25-14161 TBM |
| ) | Chapter 11, Subchapter V |
| ) | |
| ) | |
| Debtor. ) | |

**MOTION SEEKING EXPEDITED ENTRY OF ORDERS AND NOTICE OF IMPENDING HEARING THEREON**

COMES NOW Denver Bouldering Club, LLC ("Debtor"), by and through undersigned counsel, for its *Motion Seeking Expedited Entry of Orders and Notice of Impending Hearing Thereon*, and in support thereof, respectfully states as follows:

1. Debtor filed a voluntary petition for relief under Chapter 11, Subchapter V of the United States Bankruptcy Code on July 3, 2025, and is operating as a debtor-in-possession.

2. Debtor operates several bouldering and climbing gyms in the Denver area. Debtor's primary operations consist of providing memberships for members to practice bouldering and climbing in its gyms, as well as providing coaching and other educational services for outdoor activities.

3. Debtor was forced to file bankruptcy due to an underperforming location, unfavorable lease, and a dip in memberships, which created cash flow issues. While Debtor's business model has the potential to be profitable, Debtor could not maintain its prepetition obligations. Faced with mounting debt and limited liquidity, Debtor had no viable option but to seek bankruptcy protection. Debtor believes that this reorganization proceeding will facilitate a better return to creditors than a receivership or liquidation. Debtor intends to streamline operations and reject an unfavorable lease that is burdensome to ongoing business operations.

4. Debtor seeks granting of this motion pursuant to L.B.R. 2081-1. The factual predicate for each proposed expedited order is set forth below.

A. Motion for Order Authorizing Payment of Prepetition Wages, Salaries, and Expenses

5. Debtor's salaried and hourly employees are owed various sums for wages and salaries (collectively, the "Compensation"), by reason of the following:

    a. The petition in this case was filed in the middle of a pay period; and

b. It is possible that some payroll and expense-reimbursement checks issued to employees before the commencement of this case have not yet been presented for payment of have not yet cleared the banking system and accordingly will not have been honored and paid before the commencement of this case.

6. Any delay in paying Compensation to Debtor's 10 hourly employees and 6 salaried employees will severely disrupt Debtor's relationship with such employees and irreparably impair the morale of employees at the very time when their dedication, confidence, and cooperation are critical. Continuation of employees' service is essential to Debtor's ongoing business operations. Were the relief requested by this motion not to be granted, Debtor's prospects for successful reorganization would be seriously jeopardized.

7. The Compensation owed to Debtor's employees will in all instances qualify for the priority status granted by 11 U.S.C. § 507(a)(4). The aggregate amount involved is less than $5,000.00. Honoring of these prepetition wage claims will in all likelihood completely dispose of § 507(a)(4) priority claims.

8. A true and correct copy of Debtor's hourly employee list with the approximate amount of Compensation due each employee for the portion of the period ending July 13, 2025, is listed here:

| Employee Name | Gross Earnings | Expense/Taxes | Total |
|---|---|---|---|
| Benen Palmer | $228.92 | $29.49 | **$258.41** |
| Delaney Miller | $334.82 | $43.15 | **$377.97** |
| Emily Siegelman | $94.05 | $12.13 | **$106.18** |
| Eric Zhao | $204.09 | $26.31 | **$230.40** |
| Gunnar Autterson | $96.87 | $12.48 | **$109.35** |
| Jacob Kim | $180.00 | $23.21 | **$203.21** |
| Noah Munger | $206.92 | $26.66 | **$233.58** |
| Noemi Hartmann | $216.91 | $27.95 | **$244.86** |
| Peter Kroner | $232.68 | $30.00 | **$262.68** |
| Seth Allen | $296.23 | $38.17 | **$334.40** |
| **Total** | **$2,091.45** | **$269.55** | **$2,361.00** |

9. A true and correct copy of Debtor's salaried employee list with the approximate amount of Compensation due each employee for the portion of the period ending July 13, 2025, is listed here:

| Employee Name | Gross Earnings | Expense/Taxes | Total |
|---|---|---|---|
| Ellen Scherner | $23.00 | $2.97 | **$25.97** |
| Peter Pham | $470.00 | $60.58 | **$530.58** |
| Greg Espenlaub | $446.00 | $57.49 | **$503.49** |
| Thomas Betterton | $370.00 | $47.70 | **$417.70** |
| Matt Bucaric | $105.00 | $13.53 | **$118.53** |
| Nick Ferguson | $570.00 | $73.47 | **$643.47** |
| **Totals** | **$1,984.00** | **$255.74** | **$2,239.74** |

10. Debtor intends to retain its employees over the course of its reorganization and thus requests that the Court authorize Debtor to pay the Compensation immediately.

B. Motion for Entry of Interim and Final Orders Authorizing Use of Cash Collateral

11. As set forth above, Debtor plans to continue operating its business throughout the bankruptcy case and to propose a plan of reorganization that provides for the continuation of its business. Debtor believes the return to creditors will be maximized through a plan of reorganization.

12. Upon information and belief and after reviewing the UCC Financing Statements filed with the Colorado Secretary of State, the following creditors assert that they hold valid, perfected prepetition liens and security interests in assets of Debtor, including, but not limited to, cash collateral as that term is defined in § 363(a):

| Creditor | UCC Filing Date | Record ID # |
|---|---|---|
| US Small Business Administration | 5/5/20 | 20202041350 |

13. With respect to the claimant listed above, the general prohibition contained in § 552(a) is applicable and such creditor's prepetition lien against "property acquired by the estate or the debtor after commencement of the case" is not "subject to any lien resulting from any security agreement entered into by the debtor before the commencement of the case." Nevertheless, "the security interest created by such security agreement extends to property of the debtor acquired before the commencement of the case and to proceeds, products, offspring, or profits of such property acquired by the estate after commencement of the case" under § 552(b)(1). Thus, at least a portion of Debtor's future revenue may be "cash collateral" as that term is defined in § 363(a).

14. Debtor has an exigent need for immediate access to and use of any postpetition proceeds from any prepetition assets (the "Cash Collateral") to preserve and maintain its business as a going concern. All of the Debtor's creditors, not just the one listed above, will benefit from Debtor's continued operations and any return to creditors will be greater through continued operations and a reorganization under Chapter 11 than immediately ceasing operations and winding up Debtor's business. If the Court were to decline to allow Debtor to use the Cash Collateral on an interim basis, Debtor and its creditors would suffer immediate and irreparable harm.

15. Debtor's business depends on uninterrupted access to funds necessary to meet payroll, purchase inventory, maintain its gym spaces, and fund Debtor's other operating expenses. To pay its necessary operating expenses, Debtor must immediately use funds in which the creditors listed above may claim a security interest. Debtor seeks to use such funds in accordance with the projections and budget attached hereto as **Exhibit 1**.

16. Debtor proposes to use potential Cash Collateral on an interim basis until such time as the Court schedules a final hearing on the use of Cash Collateral. At the final hearing, Debtor will seek relief to use funds that may be deemed Cash Collateral through plan confirmation.

17. Debtor proposes the following to provide adequate protection for Debtor's use of its business revenue, among other limitations and requirements set forth in the proposed order:

    a. Debtor shall provide such party with a replacement lien on the proceeds of all postpetition assets to the extent that the use of cash collateral results in a decrease in the value of such party's interest in the cash collateral pursuant to § 361(2);

    b. Debtor shall maintain adequate insurance coverage on all personal property assets and adequately insure against any potential loss;

    c. Debtor shall provide periodic reports and information filed with the Bankruptcy Court, including debtor-in-possession reports;

    d. Debtor shall only expend cash collateral pursuant to the Budget attached as Exhibit 1 to this motion subject to reasonable fluctuation by no more than 15% for each expense line item per month; and

    e. Debtor shall pay all postpetition taxes.

18. Creditor's interests in protecting any interest they may have in the Cash Collateral are outweighed by strong public policies favoring continuation of jobs, preservation of going concern values, and rehabilitation of distressed debtors. *See* H.R. Rep. 834, 103rd Cong., 2nd Sess. 27–29 (Oct. 4, 1994); 140 Cong. Rec. H10768 (Oct. 4, 1994). Approval of Debtor's use of the Cash Collateral in accordance with this Motion is in the best interest of Debtor, its creditors, and the estate, as it will allow Debtor to maintain its ongoing business operations, allow Debtor to generate revenue, and provide Debtor with an opportunity to propose a meaningful plan.

WHEREFORE, Debtor respectfully requests that this Court enter an Order, a proposed form filed herewith, authorizing Debtor to use the Cash Collateral on an interim basis, and for such other and further relief as the Court deems just.

DATED this 3rd day of July, 2025.

    Respectfully submitted,

    WADSWORTH GARBER WARNER CONRARDY, P.C.

    */s/ David J. Warner*
    David J. Warner, #38708
    2580 West Main Street, Suite 200
    Littleton, Colorado 80128
    303-296-1999 / 303-296-7600 FAX
    dwarner@wgwc-law.com
    Attorneys for the Debtor-in-Possession